## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John C. O.,                                     No. 22-cv-2001 (DLM)

           Plaintiff,

v.
                                                **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

           Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff John C. O. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits. This matter is before the Court on the parties' cross-Motions for Summary Judgment. (Docs. 10–11 (Plaintiff's Motion and Supporting Memorandum), 13–14 (Defendant's Motion and Supporting Memorandum).) For the reasons below, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment, grants in part and denies in part the Commissioner's Motion for Summary Judgment, and remands this matter for further administrative proceedings consistent with this opinion.

## BACKGROUND

On November 18, 2019, Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging he had been disabled since August 21, 2019. (Tr.[1] at 14, 276.) The Social Security Administration ("SSA") denied his claim initially (Tr. at 153–57), and upon reconsideration (Tr. at 161–63). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on May 25, 2021. (Tr. at 36–66). Counsel represented Plaintiff at the hearing, and Plaintiff testified on his own behalf. (Tr. at 41–57.)

On June 22, 2021, the Commissioner sent a notice of an unfavorable decision to Plaintiff. (Tr. at 11–32.) The ALJ recognized that Plaintiff suffered from several severe impairments, including amputation of the right index finger with open reduction and internal fixation ("ORIF") of the right middle finger, right epicondylitis (elbow tendon inflammation), and right knee degenerative joint disease. (Tr. at 16.) The ALJ also acknowledged that Plaintiff had several non-severe impairments, including a body mass index ("BMI") in the low 30s consistent with obesity, left carpal tunnel syndrome, mild to moderate bilateral sensorineural hearing loss, prostatic hypertrophy, urinary urgency, and post-traumatic stress disorder ("PTSD"). (Tr. at 16–18.)

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on October 28, 2022. (Doc. 8.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

Despite Plaintiff's mental and physical impairments, the ALJ found that he is not disabled. (Tr. at 26–27.) In so doing, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c)[2] with the following limitations: occasionally kneel, crawl, or climb ramps or stairs; no climbing ladders, ropes, or scaffolds; frequent stooping or crouching; no exposure to potential workplace hazards like moving machinery or unprotected heights; no more than frequent fingering, feeling, handling, or reaching with the right upper extremity; and no use of power hand tools with the right upper extremity. (Tr. at 22.) The ALJ credited the testimony of the vocational expert that Plaintiff could perform his past relevant work as a delivery driver listed in the Dictionary of Occupational Titles ("DOT") No. 292.353-010, a medium job as generally performed per the DOT although Plaintiff's actual performance of it was very heavy. (Tr. at 26.)

Plaintiff challenges the ALJ's determination that he could perform his past relevant work for three reasons: First, Plaintiff argues that substantial evidence in the record does not support the ALJ's determination because the expert misidentified the job that Plaintiff previously performed as that of a delivery driver rather than a truck driver. Second, Plaintiff contends that substantial evidence in the record does not support the ALJ's determination because driving requires frequent use of hearing, and Plaintiff's hearing is impaired. And third, Plaintiff argues that the ALJ legally erred in finding that he could still drive

---

[2] By regulation, medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

commercially by failing to consider that Plaintiff's medical issues have disqualified him from receiving the medical certification necessary for most commercial drivers, *see* 49 C.F.R. 391.41–49, without which he cannot return to his previous work.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ used erroneous legal standards, or if they incorrectly applied the law, those are reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

4

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520[3] for evaluating DBI claims. Rather, he asserts that the ALJ made three critical errors at step four by failing to challenge the vocational expert's misclassification of his past relevant work, disregarding Plaintiff's hearing impairment, and disregarding Plaintiff's inability to obtain the medical certification necessary to drive commercially. Because of these errors, Plaintiff argues that the vocational expert's testimony at the May 25, 2021 hearing, and the ALJ's ultimate RFC determination, are divorced from the record of this case and therefore lack a substantial evidentiary basis. The Court will consider each of Plaintiff's three challenges in turn.

## I.   Substantial evidence in the record supports the ALJ's classification of Plaintiff's past relevant work.

Plaintiff first argues that substantial evidence in the record does not support the ALJ's determination that he can perform his past relevant work because the ALJ used the wrong job to reach this determination. As a starting point, Plaintiff directs the Court's attention to his subjective description of his past work tasks in the record which were to

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past relevant work given their limitations. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

work for about 50 to 60 hours per week; perform pre-trip inspections of a truck; drive the truck to a destination; load, unload and sometimes reload the truck (which includes lifting and carrying of grocery products in case-sized quantities of typically 40 pounds—but sometimes up to 80 pounds—for about 50 feet, and using a hand jack to transfer pallets of boxes weighing about 2,000 pounds); and drive the truck to a return point at the end of the day for a daily total of 400 to 500 driving miles. (Tr. at 281, 291.)

The vocational expert opined—and the ALJ agreed—that Plaintiff's past relevant work fit the job description of a delivery driver under DOT No. 292.353-010, which the DOT describes as follows:

> Drives truck or automobile over established route to deliver and sell products or render services, collects money from customers, and makes change: Drives truck to deliver such items as beer, soft drinks, bakery products, dry cleaning, laundry, specialty foods, and medical supplies to customer's home or place of business. Collects money from customers, makes change, and records transactions on customer receipt. Writes customer order and instructions. Records sales or deliveries information on daily sales or delivery record. Calls on prospective customers to solicit new business. Prepares order forms and sales contracts. Informs regular customers of new products or services. Listens to and resolves service complaints. May place stock on shelves or racks. May set up merchandise and sales promotion displays or issue sales promotion materials to customers. May collect or pick up empty containers or rejected or unsold merchandise. May load truck. May issue or obtain customer signature on receipt for pickup or delivery. May clean inside of truck. May perform routine maintenance on truck. May direct DRIVER HELPER, SALES ROUTE (retail trade; wholesale tr.) 292.667-010 to load and unload truck and carry merchandise. May be designated according to product delivered or service rendered.

DICOT 292.353-010, 1991 WL 672567. However, the vocational expert reported that Plaintiff performed the job at a "very heavy" level when compared to the role's general performance. (Tr. at 60 (hearing testimony), 348 (vocational expert's case analysis).) This

"very heavy" description refers to the SSA's five physical exertion categories, which include sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567. As generally performed, the delivery driver role is "medium work," defined as "work [that] involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). The vocational expert and ALJ agreed that Plaintiff performed the delivery driver role as "very heavy," meaning his "work involve[d] lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." *Id.* § 404.1567(e).

Plaintiff contends his past relevant work aligns with a different DOT job: a truck driver under DOT No. 905.663-014. That description reads:

> Drives truck with capacity of more than 3 tons, to transport materials to and from specified destinations: Drives truck to destination, applying knowledge of commercial driving regulations and area roads. Prepares receipts for load picked up. Collects payment for goods delivered and for delivery charges. May maintain truck log, according to state and federal regulations. May maintain telephone or radio contact with supervisor to receive delivery instructions. May load and unload truck. May inspect truck equipment and supplies, such as tires, lights, brakes, gas, oil, and water. May perform emergency roadside repairs, such as changing tires, installing light bulbs, tire chains, and spark plugs. May position blocks and tie rope around items to secure cargo during transit. When driving truck equipped for specific purposes, such as fighting fires, digging holes, and installing and repairing utility company lines, may be designated Fire-Truck Driver (petrol. & gas); Hole-Digger-Truck Driver (construction; tel. & tel.; utilities); Tower-Truck Driver (tel. & tel.; utilities). When specializing in making deliveries, may be designated Delivery-Truck Driver, Heavy (any industry). May be designated according to type of truck driven as Truck Driver, Flatbed (logging). May be designated according to kind of cargo transported as Water Hauler (logging).

DICOT 905.663-014, 1991 WL 687708.

According to Plaintiff, the ALJ failed to perform his duty under Social Security Ruling ("SSR") 00-4p to address the conflict between the actual job Plaintiff performed (which he claims was a truck driver according to the DOT) and what the vocational expert testified his job was (a delivery driver). SSR 00-4p states:

> [B]efore relying on [a vocational expert's] evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [a vocational expert] and information in the[DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

For her part, the Commissioner responds that substantial evidence in the record supports the ALJ's conclusion at step four that the vocational expert correctly classified Plaintiff's past relevant work for two reasons. First, she notes that Plaintiff failed to challenge to the vocational expert's classification of Plaintiff's past work during the hearing or in his post-hearing memorandum. And second, she points out that the ALJ did not find any discrepancy between the record and the delivery driver job identified by the vocational expert; instead, the ALJ acknowledged that Plaintiff had not performed the delivery driver job as it is generally performed, but had instead performed the job at the "very heavy" level. (Tr. at 26, 60, 348.)

As noted above, "substantial evidence" is enough evidence that reasonable minds would accept the conclusion reached as supportable. *Biestek*, 139 S. Ct. at 1154. The

question here is whether reasonable minds would accept, on this record, the ALJ's conclusion that the vocational expert correctly categorized Plaintiff's past relevant work.

To determine how past relevant work is categorized, an ALJ may rely on evidence including subjective reports by a plaintiff (or other individuals with knowledge of a plaintiff's past work), vocational expert analyses and testimony, and the DOT.[4] SSR 00-4p, 2000 WL 1898704. Here, the ALJ relied on Plaintiff's subjective work history report and the vocational expert's testimony at the hearing to determine the appropriate classification for Plaintiff's past relevant work under the DOT. (Tr. at 59–65, 322–25.) Although Plaintiff was represented by counsel, the ALJ received no challenge from Plaintiff at the hearing or in post-hearing briefing on the vocational expert's identification of Plaintiff's past relevant work classification as a delivery driver. (Tr. at 59, 349–51.) Additionally, neither the vocational expert nor the ALJ found that the delivery driver classification as described in the DOT accurately reflected Plaintiff's past relevant work as performed, instead finding that Plaintiff had performed the work of a delivery driver in a

---

[4] While it does not change the Court's decision here, the Court acknowledges that the national workforce's jobs have significantly changed since the last time the DOT was updated in 1991. *See Medved v. Kijakazi*, 855 F. App'x 311 (8th Cir. 2021) (citing *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018)). ALJs, vocational experts, and judges routinely acknowledge variations in jobs that have occurred since the DOT's last update. *See, e.g.*, *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *15 (D.S.D. July 14, 2022) (calling the DOT "a document that egregiously has not been updated since 1991 and is comfortably divorced from reality in 2022"); *Poole v. Kijakazi*, 28 F.4th 792, 795 (7th Cir. 2022) ("[T]he fact that the DOT was last revised before the Internet revolution means that it is a resource that must be used with care. Recognizing that the DOT is increasingly out of step with the modern economy, the [SSA] has been planning for years to replace it . . . .") (citing *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018)).

9

"very heavy" way compared to its general performance in the national economy. (Tr. at 26, 60, 348.)

On these facts, the Court is not persuaded that it should second guess the ALJ's determination that Plaintiff's past relevant work was most like that of a delivery driver. *See Spencer v. Comm'r of Soc. Sec.*, No. 1:13-cv-454 (MRB/SKB), 2014 WL 4351418, at *4 (S.D. Ohio Sept. 2, 2014) (citing SSR 00-4p, 2000 WL 1898704) ("A vocational expert is uniquely qualified to determine how jobs are categorized or classified in the DOT."); *accord Mary G. v. Berryhill*, No. 17-cv-3436 (KMM), 2019 WL 1130173, at *4 (D. Minn. Mar. 12, 2019) (citing *Spencer*). In reviewing the evidence cited by the ALJ, the Court finds that while there is some evidence that supports Plaintiff's position (i.e., that his tasks were more akin to the truck driver job description), there is also some evidence that supports the ALJ's position (i.e., that his job required transporting and lifting heavier loads but was otherwise akin to a delivery driver job). *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)) ("We must consider evidence that both supports and detracts from the ALJ's decision, but we will not reverse an administrative decision simply because some evidence may support the opposite conclusion."); *see also Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021); *see Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (holding courts should only reverse an ALJ's decision when it falls outside "the available zone of choice," meaning that the ALJ's decision is not among the reasonable conclusions that can be drawn from the record evidence.).

Had the ALJ determined that Plaintiff's past relevant work was that of a delivery driver *as it is generally performed*, the record would not have supported such a finding. Plaintiff reported transporting and lifting significantly heavier weights in his past role than those a delivery driver typically lifts. (*Compare* Tr. at 281 (Plaintiff claimed lifting "[g]rocery products in case quantities" typically weighing approximately 40 pounds, but sometimes weighing as much as 80 pounds) *with* DICOT 292.353-010, 1991 WL 672567 (defining the delivery driver job as "medium" under 20 C.F.R. § 404.1567(c), limiting frequently lifting to approximately 25 pounds, and no more than 50 pounds).) Yet because the ALJ found that Plaintiff's actual performance differed from the DOT's job as described, there is enough evidence to find for the Commissioner on this point.

Plaintiff disagrees, arguing that SSR 00-4p required the ALJ to identify the alleged conflict between the vocational expert's testimony that Plaintiff was previously a delivery driver, and the DOT's description of a truck driver that Plaintiff claims is a better description of his past role. This challenge appears to be a claim that the ALJ legally erred by failing to follow one of the agency's interpretive rulings. While it is true that SSR 00-4p requires an ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the [DOT] . . . and [to] [e]xplain in the determination or decision how any conflict that has been identified was resolved[,]" the Court finds no error in the ALJ's implicit determination that there was no conflict between the vocational expert's testimony and the DOT. SSR 00-4p, 2000 WL 1898704. SSR 00-4p does not require an ALJ to automatically find a conflict if a plaintiff's job—as performed—deviates from the general performance

of it nationally. Rather, as was done here, it is entirely appropriate for an ALJ to implicitly resolve any conflict by including additional components of a claimant's job as performed to supplement the DOT's otherwise-adequate definition.

Here, the ALJ reviewed the entire record, did not identify a conflict between the vocational expert's testimony and the DOT, and reached a finding at step four that Plaintiff's RFC did not preclude him from performing his past relevant work classified as a delivery driver as it is generally performed. Even if, as Plaintiff argues, other possible conclusions could be reached on the record, the Court finds no reversible error in the classification determination that the ALJ made here based on the guidance set forth in SSR 00-4p. *See, e.g.*, *Richmond v. Berryhill*, No. 16-cv-140 (LRR), 2017 WL 4074633, at *3 (N.D. Iowa Sept. 14, 2017). For these reasons, the Court grants the Commissioner's motion and denies Plaintiff's motion as to the ALJ's categorization of his past relevant work.

## II. Substantial evidence in the record supports the ALJ's RFC determination that Plaintiff did not require a limitation for his hearing impairment because he could use hearing aids.

Plaintiff next argues that substantial evidence in the record fails to support the ALJ's decision at step four to omit any limitations for Plaintiff's hearing impairment. He specifically points to the ALJ's failure to include his hearing impairment in his RFC, which he contends would rule out his past relevant work as a commercial driver. As support for this position, Plaintiff directs the Court to his subjective reports of hearing loss and visits to medical professionals about this condition in the record—noting that although he was prescribed hearing aids, they failed to work for him because of excessive wax production. (Tr. at 317–18, 320, 410, 416.)

The Commissioner argues that Plaintiff bears the burden of proving that he requires hearing limitations in his RFC, and that he fails to meet that burden. She claims Plaintiff has not established that any medical provider found Plaintiff could not use hearing aids because of excessive wax production. Instead, she contends that Plaintiff decided not to use the available assistance of hearing aids, and such a decision fails to support that his RFC requires a limitation for a hearing impairment. The Commissioner also argues that one of the jobs that the vocational expert found Plaintiff could perform—a meat clerk—does not require the ability to hear.

The Court agrees that it is Plaintiff's burden to establish that his RFC should have included a limitation for his hearing impairment. *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing 20 C.F.R. §§ 404.1520(a), (e), (f); 404.1545–46; 404.1560–61; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The question before the Court is whether a reasonable mind could accept that no such limitation is necessary on this record. *Biestek*, 139 S. Ct. at 1154. In considering this question, the Court does not substitute its own judgment for that of the ALJ by reweighing the evidence; instead, it must consider evidence that supports and detracts from the ALJ's decision and affirm the ALJ's decision where "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Milam*, 794 F.3d at 983 (quoting *Perkins*, 648 F.3d at 897).

The record here demonstrates that a reasonable mind could accept Plaintiff's RFC did not require a limitation for Plaintiff's hearing impairment. Reviewing the record before the ALJ, Plaintiff had a hearing aid consultation with an audiologist on November 8, 2019,

in which the audiologist found "a mild to moderate sensorineural hearing loss bilaterally" and documented that Plaintiff reported a "ringing in [his] ears or head noise[.]" (Tr. at 410.) The audiologist provided Plaintiff with "a hearing aid recommendation" to be "fit with an amplification device[.]" (*Id.*) He later fitted Plaintiff with that hearing aid on November 25, 2019, noting that the "hearing aids were adjusted . . . at user level 1 because there was too much wax in the ear[,]" but that "[t]he initial fit and sound of the devices were good." (Tr. at 411.) The audiologist further noted that Plaintiff "[n]eeds wax removed." (Tr. at 413.) A physician removed the wax on December 4, 2019, and recommended that Plaintiff "use olive oil to the ears once a week for wax" and "[f]ollow up in 6 months." (Tr. at 415.) On December 30, 2019, Plaintiff returned for a hearing aid follow-up visit and "report[ed] he would like to return the hearing aids for credit because of the problems he has with excess wax production and feeling that he would not be able to keep the hearing aids working for him." (Tr. at 416.) Later in the record, in March 2021, Plaintiff had another hearing assessment and received another recommendation that he use hearing aids. (Tr. at 799–00.)

At the telephonic hearing before the ALJ on May 25, 2021, Plaintiff noted, "I have hearing difficulty, but I have hearing aids in and my phone bluetooths to them . . . . It's almost like a speakerphone[.]" (Tr. at 41–42.) The transcript reflects that Plaintiff heard and answered the ALJ's questions. (Tr. at 38–58.)

During that hearing, the ALJ asked the vocational expert if she had "reviewed the file and listened to [Plaintiff's hearing] testimony[,]" and the vocational expert responded "Yes, I have." (Tr. at 59.) The ALJ and vocational expert did not discuss any hearing

limitations, which suggests neither believed it to be an issue warranting additional consideration. (Tr. at 59–65.)

In the ALJ's decision, the ALJ found that "[Plaintiff] has mild to moderate sensorineural hearing loss bilaterally" and "[h]e wears hearing aids[,]" but noted that "[t]here is no evidence of more than minimal work-related restrictions related to this impairment during the relevant time period." (Tr. at 17 (citing Tr. at 36–66, 410, 799–00).) Plaintiff's RFC reflects no limitations as to hearing. (Tr. at 22.)

The Court finds that a reasonable mind could find Plaintiff's hearing impairment was not significant enough to warrant inclusion in the limitations of his RFC after considering the record on this impairment. *Biestek*, 139 S. Ct. at 1154. In general, where the symptoms of a medical condition that would otherwise limit a plaintiff's abilities are treatable, that condition and its symptoms are not considered disabling. *See, e.g.*, *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)).

SSR 18-3p explains the circumstances under which "[an] individual has good cause for not following the prescribed treatment." SSR 18-3p. Such good cause can include religious beliefs, unaffordability, an inability to understand the consequences of failing to follow the prescribed treatment, medical disagreement, intense fear of surgery, a history of unsuccessful results from the prescribed treatment, the high risk of loss of life or limb the treatment presents, the high risk of addition to opioids, or some other reason that rises to the level of good cause. SSR 18-3p , 2018 WL 4945641 (Oct. 7, 2018.) Here, the reasons Plaintiff claims that he cannot follow the recommended course of treatment—using hearing

aids—is because they do not work for him because of excessive wax production. The record shows that Plaintiff could have his wax removed, and indeed did so, and also that a medical provider explained how to manage Plaintiff's excessive wax production by using olive oil. (Tr. at 415.) On this record, Plaintiff fails to meet his burden to show that he could not follow the prescribed treatment of using olive oil to control his ear wax sufficiently to use his hearing aids. Therefore, for all the reasons above, the Court grants the Commissioner's motion and denies Plaintiff's motion as to the lack of limitations related to Plaintiff's hearing impairment.

**III.   The ALJ legally erred in failing to determine whether Plaintiff's impairments precluded him from obtaining a commercial driver's license ("CDL"), and the error was not harmless because the ALJ reached no determination at step five on whether Plaintiff could perform other work that does not require a CDL.**

Plaintiff's last argument is that substantial evidence in the record does not support the ALJ's determination that he can perform his past relevant work. Plaintiff claims the record reflects his ineligibility for the medical certification required for commercial driving jobs. He points to evidence in the record of a right-hand table saw injury from August 2019 that required surgical amputation, the placement of screws, and eventually a bone graft, and which resulted in a fracture that failed to heal well and also caused phantom pain requiring pain medication. (Tr. at 431, 436–38, 456, 476.) Plaintiff claims that he no longer qualifies for a CDL because he cannot grip the steering wheel as necessary for driving, and because he uses a disqualifying medication—Gabapentin—for his pain. Because the ALJ disregarded these circumstances, Plaintiff argues that the vocational expert's testimony is incomplete, the RFC is inaccurate, and the ALJ's determination at step four is erroneous.

The Commissioner responds that Plaintiff presents no legal authority or DOT criteria that shows he could no longer drive commercially because he cannot obtain the required medical certification. The Commissioner points out that the ALJ considered the medical record from one of Plaintiff's treating physicians stating that Plaintiff could no longer drive commercially due to his hand injury, but that this conflicted with Plaintiff's testimony at the hearing and in treatment records that he could still drive despite his discomfort. She also argues that Plaintiff's medical treatment records show that his right-hand pain improved after surgery in December 2019, and that despite some challenges with activities including steering a truck without power steering and fishing for long periods of time, he could perform many activities with his right hand. The Commissioner also contends that Plaintiff presents no evidence that taking a Gabapentin prescription for pain has caused him side effects that would interfere with driving, nor that the drug disqualifies him from receiving a CDL. Finally, she argues that because the vocational expert testified Plaintiff could perform several other jobs that do not involve driving, any error in finding Plaintiff could still perform his past relevant work is harmless.

Neither the Eighth Circuit nor any court in this District has analyzed an ALJ's finding that a plaintiff can perform their past relevant commercial driving work when the record suggests they cannot obtain the licensure necessary to do so under state law. After careful consideration, the Court cannot find that so long as the DOT is silent about any CDL requirement, it should affirm an ALJ's finding that a commercial driver who may be unable to obtain a CDL can still drive commercially. There is the DOT, and there is a vocational expert's knowledgeable and experienced testimony, but there is also common

17

sense. A commercial driver generally needs a CDL—that is, a Commercial Driver's License. If they cannot obtain one because of medical impairments, then they cannot perform past relevant work that requires a CDL—as actually or generally performed.

Finding no binding authority on this issue, the Court extends its search to persuasive authorities. The Ninth Circuit has held that it was an error for an ALJ to conclude that a plaintiff could perform his past relevant work as a courier driver when his prescribed pain medication would cause him to fail the drug testing requirements for that job. *See Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010). The Ninth Circuit pointed out that, by regulation, the treatment of pain that results from an impairment must be considered in a plaintiff's RFC limitations. *Id.* (citing 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."); 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, . . . include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms.")). The ALJ in *Berry* had refused to consider whether the plaintiff would be unable to pass the drug tests required to be a courier driver, "specifically opining that he need not consider 'today's environment' because 'the regulations tell me to look at the DOT' and 'don't say anything about what's going on in the world today.'" *Id.* The Ninth Circuit reversed and remanded the ALJ's decision, holding that the ALJ's "refusal [to consider today's environment] was based on a legally erroneous reading of the regulations,

and [the plaintiff] must be permitted to prove his contention that drug testing requirements make it physically impossible for him to perform his past relevant work." *Id.* at 1233–34.

A sister court in this Circuit has followed the Ninth Circuit's *Berry* precedent under facts that, while not identical, are serviceable to the Court's analysis here. In *Fendler v. Saul*, the ALJ found that the plaintiff "[was] capable of performing past relevant work as a delivery driver[,]" but the plaintiff argued he could not "because a [CDL] prohibits the use of opioids" and he had "a Methadone prescription[.]" No. 4:21-cv-614 (SRW), 2022 WL 3153717, at *3 (E.D. Mo. Aug. 8, 2022). The court held "that the ALJ erred in not considering the effect [the plaintiff's] prescribed treatment and disqualification for a CDL had on his capability of performing his past relevant work as a delivery driver." *Id.* at *6.

Similarly, here, common sense dictates that Plaintiff will likely need a CDL to meet the requirements of a commercial delivery driver role, regardless of what the DOT describes or what the vocational expert has testified. The record fails to show whether Plaintiff's contention that he cannot obtain his medical certification for a CDL is indeed the case. While it is Plaintiff's burden to prove what his RFC limitations should include, an ALJ must "develop the record fully and fairly . . . because an administrative hearing is not an adversarial proceeding." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (quoting *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992); citing *Henrie v. Dept. of Health & Hum. Serv.*, 13 F.3d 359, 361 (10th Cir. 1993)).

The record here shows that Plaintiff experiences pain for which he takes pain medication, and Plaintiff and one medical professional have stated that this means that he could not pass the medical examination required to perform his past relevant work. (Tr. at

320 ("I have been denied a truck driver's health card because I can't grip the steering wheel and because I have to use gabapentin for the pain. Without the health card I [cannot] return to my previous career as a truck driver."), 476 (containing assessment notes from Susan M. Moen, M.D., directing Plaintiff to, among other things, "[c]ontinue Gabapentin to 300 mg 3 times daily" and providing a "[l]etter . . . stating that the patient will no longer meet requirements for commercial driving due to this injury.").[5])

Whether or not these circumstances preclude Plaintiff from his past relevant work is a question that the Court finds the current record lacks sufficient evidence to resolve. The Court specifically finds that the ALJ needed to develop the record enough to establish whether "[t]he type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or have taken to alleviate your pain or other symptoms" should have been reflected in his RFC limitations and thus should have impacted his ability to perform his past relevant work.[6] 20 C.F.R. §§ 404.1545(a)(1), 404.1529(c)(3). Because the ALJ failed to follow these regulations in reaching a disability determination at step four, the Court holds that the ALJ legally erred. *Fendler*, 2022 WL 3153717, at *6.

The Commissioner urges the Court to find such an error—if made—was harmless, because the vocational expert testified that Plaintiff could perform other jobs that do not

---

[5] The Commissioner does not dispute Dr. Moen's opinion but points out that Plaintiff never included Dr. Moen's letter in the record. The ALJ also noted this when finding Dr. Moen's opinion unpersuasive. (Tr. at 25.)

[6] While the Court finds the ALJ should have further developed the record on this point, neither the parties nor the ALJ are strictly limited to considering only the effect of Plaintiff's pain medication on his ability to drive; if other circumstances are equally relevant to the determination of whether Plaintiff could work as a commercial driver, those ought to be considered as well.

require a CDL, including a warehouse worker, package sealer machine tender, and meat

clerk. (Tr. at 63–64.) The problem is that the ALJ's decision is silent on this point. Rather

than proceeding to step five to consider whether Plaintiff could perform other work that

did not require a CDL, the ALJ stopped at step four and determined that Plaintiff was not

disabled. (Tr. at 26.)

If the ALJ had continued to step five, the ALJ's decision explained the burden at

this step:

> In order to support a finding that an individual is not disabled at this step, the
> [SSA] is responsible for providing evidence that demonstrates that other
> work exists in significant numbers in the national economy that the claimant
> can do, given the residual functional capacity, age, education, and work
> experience (20 CFR 404.1512 and 404.1560(c)).

(Tr. at 16.) The Court will not improperly substitute its judgment for that of the

Commissioner and infer that the ALJ would have met this step five burden by adopting the

vocational expert's opinion about other work Plaintiff could perform. *See* 20 C.F.R. §

404.1520(g) ("If you can make an adjustment to other work, we will find you not disabled.

If you cannot, we will find you disabled."); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th

Cir. 2009) (citing *Steed*, 524 F.3d at 875 n.3) ("If the ALJ determines the claimant cannot

resume her prior occupation, the burden shifts to the Commissioner at step five to show the

claimant is capable of performing other work.")

In sum, because the record is not sufficient to determine whether Plaintiff can

perform his past relevant work, the ALJ erred at step four. Because the ALJ's error was

not harmless, the Court reverses and remands this matter for reconsideration of step four

and, if necessary, step five. In conducting its analysis, the Court holds that the ALJ may

not rely on the vocational expert's past hearing testimony, but must hold a new hearing and posit new hypothetical questions to a vocational expert consistent with the ALJ's additional record development and new RFC. *See Buckner v. Apfel*, 213 F.3d 1006, 1013 (8th Cir. 2000).

## ORDER

Based on the above, and on all the files, records, and proceedings in this case,

**IT IS ORDERED** that:

1.  Plaintiff John C. O.'s Motion for Summary Judgment (Doc. No. 10) is **GRANTED IN PART** and **DENIED IN PART**;

2.  Defendant Kilolo Kijakazi's Motion for Summary Judgment (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART**; and

3.  The matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 28, 2023                     *s/Douglas L. Micko*
                                              DOUGLAS L. MICKO
                                              United States Magistrate Judge